UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WAPATO HERITAGE, LLC,

    Plaintiff,

    v.

UNITED STATES OF AMERICA
UNITED STATES DEPARTMENT
OF THE INTERIOR; and UNITED
STATES BUREAU OF INDIAN
AFFAIRS,

    Defendants.

NO.  CV-08-177-RHW

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Before the Court are Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 13) and Defendant's Cross Motion for Partial Summary Judgment (Ct. Rec. 17). A hearing on these motions was held on November 17, 2008. Michael McMahon appeared on behalf of Plaintiff; Pamela DeRusha appeared on behalf of Defendant.

    Plaintiff challenges an administrative ruling by Defendant Bureau of Indian Affairs ("BIA") that Plaintiff failed to validly exercise an option to renew a lease for certain real estate located in Chelan County, Washington. Plaintiff now moves for summary judgment on its third cause of action, seeking a declaratory judgment that the option to renew was validly exercised. Defendant files a cross-motion for partial summary judgment, moving the Court to dismiss Plaintiff's first four claims for relief: (1) for injunctive relief, enjoining Defendants from leasing the subject

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 1**

property to another entity or person; (2) for deprivation of property without due
process in violation of the Fifth Amendment; (3) for a declaratory judgment that
the option to renew was validly exercised; and (4) for arbitrary & capricious
agency action in finding the lease had not been validly renewed.

## I. Facts

The facts recited below are drawn from the documentary record provided by
the parties, which the parties agree constitutes all evidence relied upon by the BIA
in making its administrative ruling. Unless otherwise noted, the following facts are
undisputed.

Moses Allotment No. 8, also known as Indian Allotment 151-MA-8 ("MA-
8") is part of an original allotment that was granted to Wapato John in 1907 in an
agreement between the Moses band and the Secretary of the Interior. The United
States holds the land in trust for the benefit of Wapato John and his heirs.
Authority to administer MA-8 is granted to the Department of Interior; the
Secretary of the Interior has delegated that authority to the BIA, the local
department of which is known as the Colville Agency.

An Indian landowner named William Wapato Evans, Jr., held an
approximate 5.4% beneficial ownership in MA-8 as of 1979. In 1982, Evans began
negotiating a lease of MA-8 from the then existing landowners, and eventually
obtained approval for his proposed lease from a total of 64% of the Indian
landowners. On February 2, 1984, The Colville Agency of behalf of the BIA
approved Lease No. 82-21 ("the Master Lease"), leasing MA-8 in its entirety to
Evans for a period of twenty-five years. In addition to the 64% of Indian
landowners who had already consented, the BIA  consented to the lease on behalf
of the rest of the trust interests pursuant to the BIA's regulatory authority. The BIA
also approved the lease  on behalf of the Secretary of the Interior.

The Master Lease contains the following provision regarding renewal:

3.    TERM – OPTION TO RENEW

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT** * 2

The term of this lease shall be twenty-five (25) years, beginning on the date that the lease is approved by the Secretary.

This lease may be renewed at the option of the Lessee for a further term of not to exceed twenty=five [sic] (25) years, commencing at the expiration of the original term, upon the same conditions and terms as are in effect at the expiration of the original term, provided that notice of the exercise of such option shall be given by the Lessee to the Lessor and the Secretary in writing at lease [sic] twenve [sic] (12) months prior to said expiration of original term.

The Master Lease defines "Lessee" as Evans, and "Lessor" as the individual Indian landowners whose names and addresses were attached as an exhibit to the Master Lease. Because the number of heirs and owners of MA-8 had multiplied into many fractional ownership interests that were not identified in the lease, the BIA had the regulatory authority to consent to the lease for those Indian owners. The exhibit listed the BIA Superintendent of the Colville Agency as lessor to function as a "guardian" of the other Indian landowners not listed in the lease. Regarding notice, paragraph 29 of the Master Lease provides that, "All notices to Lessor shall be sent to the landowners," via certified mail, with copies of notices sent to the BIA office in Nespelem, Washington. The Master Lease also provides that the Secretary will provide Lessee with the current names and addresses of the Indian landowners upon request.

On January 30, 1985, Evans sent a letter to the Colville Agency, signed by Evans as "General Partner, Mar-Lu, Ltd." The letter references the Master Lease and states:

In accordance with paragraph three (3) of the subject lease dated February 2, 1984, you are notified by receipt of this letter that Mar-Lu, Ltd. hereby exercises its option to renew the subject lease for a further term of twenty five (25) years to be effective at the expiration of the original twenty five (25) year term. This notice extends the total term of subject lease to February 1, 2034.

The letter was not sent by certified mail and was not sent to the Indian owners listed in the attachment to the lease.

The parties have not produced any written response to this letter from the

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 3**

Colville Agency.[1] Plaintiff concedes that notice was not sent to the Indian landowners via certified mail or otherwise, as required by the express terms of the Master Lease.

The BIA  never explicitly communicated to Plaintiff that the option to renew had been validly exercised. The issue simply never arose, formally, because BIA was never asked to make such an administrative decision until 2007. However, several events in the record suggest that in the years following Evans' letter, both Evans and the BIA  assumed that the option to renew had been validly exercised. These events include the following:

1.    Evans began development of a camping club or RV Park on MA-8, and in 1989 sought to have the BIA approve an "Expanded Membership Sale Agreement." BIA approval was required because Evans had changed his original development plan. The Expanded Membership Agreement includes the following language: "The duration of this membership is coextensive with the fifty (50) year term commencing February 2, 1984, of Seller's lease for the Mill Bay property." The BIA approved the modification of Evans' development plan by letter dated July 7, 1989, without specifically referencing the Expanded Membership Agreement's characterization of the term of the lease.

2.    Evans subsequently negotiated a sublease of MA-8 to the Colville

---

[1]Defendants have produced a copy of the letter that includes a handwritten note dated April 4, 1985, purportedly written by Sharon Redthunder, then Realty Officer of the Colville Agency. Defendants assert this note records a telephone conversation between George Davis, then Superintendent of the Colville Agency, and Evans: "George Davis informed Bill Evans by phone that cannot be done unless lease is modified. They will request modification in writing." Plaintiff object to this handwritten note on the grounds that it constitutes hearsay within hearsay, does not meet any of the hearsay exceptions provided by FRE 803, and is irrelevant because the BIA had no authority to reject notice of the exercise of the option to renew. The Court has ignored this note for the purposes of its analysis below.

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 4**

Tribal Enterprises Corporation ("CTEC"). The sublease references Evans' January 30, 1985, letter and states that the option to renew the Master Lease had been exercised by that letter. The BIA approved the CTEC sublease on November 10, 1993.

3.     Evans died on September 11, 2003, and as Evans' successor Plaintiff became involved in litigation with members of the RV Park located on MA-8 during September 2004. That litigation was ultimately resolved through mediation and a settlement agreement. A key issue involved in the mediation was the right of the RV Park members to remain on MA-8 through 2034. The parties agree that BIA officials were present for at least some of the mediation, but dispute the level of those officials' involvement. The settlement agreement explicitly recognized the extension of the Master Lease through 2034, but the parties dispute whether BIA officials read and approved the settlement agreement.

4.     In 2005, Plaintiff began to prepare a Replacement Lease Proposal for MA-8, and in connection therewith Plaintiff's manager (Jeffrey Webb) telephoned Gene Nicholson, then Acting Superintendent of the BIA Colville Agency, to obtain a current list of Indian landowners and their addresses. Nicholson informed Webb that he would not provide such a list, and all correspondence to the Indian landowners should go through the Colville Agency, who would forward the correspondence to the Indian landowners. Following that conversation, Plaintiff sent a 99 year Replacement Lease Proposal to the Colville Agency. After receiving the Proposal, the Colville Agency sent a letter to the Indian landowners notifying them of a series of meetings set up to discuss the Proposal. The Proposal explicitly stated that the Master Lease runs through 2034. During these meetings, Plaintiff's counsel distributed copies of Evans' January 30, 1985, letter. Plaintiff asserts that Indian landowners representing at least 64.9% of MA-8's beneficial ownership had

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 5**

1  received hand delivered copies of the letter.[2] The only evidence in the record with

2  respect to meeting attendance establishes that present at one meeting were

3  representatives of Plaintiff and the Confederated Tribes of the Colville Reservation

4  ("Tribe"), along with seven individual Indian landowners.

5          5.      Letters in 2006 and 2007 from Marlene Marcellay, an Indian

6  landowner of MA-8 with an 0.30% interest, reference the BIA's "approval" of

7  Evans' renewal of the Master Lease. These letters were addressed to MA-8 Indian

8  landowners and were received by at least three Indian landowners.

9          6.      In the fall of 2007, Plaintiff met with Indian landowners representing

10  a total of 65.2% of the beneficial ownership to discuss a new casino. Evans'

11  extension of the Master Lease until 2034 was openly discussed at the meeting.

12          The apparent assumption by the Plaintiffs and the BIA that the lease had

13  been extended was first questioned in 2007. In October 2007, the Tribe sent a letter

14  to the BIA requesting a meeting to "discuss the current legal status of the 25-year

15  extension." This letter was prompted by Plaintiff's efforts to develop a "major

16  residential development" on MA-8. The BIA in its administrative capacity

17  reviewed the lease terms and correspondence. In a letter to Plaintiff dated

18  November 30, 2007, the BIA  stated its opinion that the option to renew had not

19  been effectively exercised by Evans' 1985 letter. The BIA expressed two bases for

20  this opinion: (1) Sharon Redthunder's handwritten note, quoted above; and (2)

21  Evans' failure to communicate notice to the individual Indian landowners. At this

22  point, the Plaintiffs had approximately two months left in which to properly

23  exercise the option to renew.

24          Rather than sending the notice as required by the master lease, Plaintiff's

25  counsel responded with a letter dated December 18, 2007, expressing Plaintiff's

26

27          [2]Defendants dispute Plaintiff's calculations of the percentage because

28  Defendants argue Plaintiff's life estate interest cannot be counted as a full interest.

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT * 6**

position that the term of the Master Lease had been properly extended. The letter does not address the issue of providing notice to the Indian landowners, but instead references prior BIA actions that allegedly acknowledged and confirmed that the lease had been extended. The letter is copied to seven "landowners". Plaintiff asserts these seven individuals were the only Indian landowners for whom Plaintiff had addresses. The letter was not sent via certified mail. Receiving no response, Plaintiff sent another letter on January 7, 2008, requesting a response.

The BIA did not issue a another decision on lease renewal until August 7, 2008 (more than six months after the deadline for the lessee to provide notice of renewal). That decision was appealed and as of the date the Complaint was filed, the appeal had not yet been decided. However, Defendants have provided a letter from the Superintendent of the BIA Superintendent of the Colville Agency dated October 31, 2008, upholding the Agency's initial decision and finalizing the agency action.

## II.  Standard of Review

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to (2) any material fact and that (3) the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The parties agree that this is a judicial review of agency action under the Administrative Procedures Act, 5 U.S.C. § 706. However, the parties do not agree on the appropriate standard of review. Plaintiff argues the appropriate standard of review for the questions before the Court is *de novo*, citing *Howard v. Federal Aviation Admin.*, 17 F.3d 1213, 1215 (9th Cir. 1994) (noting that "purely legal questions are reviewed *de novo*"). Defendants, meanwhile, argue that the appropriate standard is that provided by the APA: that agency action may be set aside "only where it finds the action 'arbitrary, capricious, an abuse of discretion,

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** * 7

1    or otherwise not in accordance with law'." *Star Lake R.R. Co. v. Lujan*, 737 F.

2    Supp. 103, 107 (D.D.C. 1990) (quoting 5 U.S.C. § 706).

3        Plaintiff correctly cites the current rule in the Ninth Circuit regarding the

4    appropriate standard of review in this context. The rule ultimately traces back to

5    *Go Leasing v. Nat'l Transp. Safety Bd.*, 800 F.2d 1514, 1517 (9th Cir. 1986),

6    which does not analyze the appropriate standard of review in the agency context

7    but simply cites *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir. 1984).

8    *McConney* is a criminal case regarding the "knock-notice" requirement and has no

9    connection whatsoever to agency action. Thus, no Ninth Circuit case has addressed

10   this issue with any substantive analysis.

11       This issue is the subject of a circuit split, and the apparent majority rule is

12   expressed succinctly in a more recent case from the Tenth Circuit: "An agency's

13   interpretation of a contract is reviewed under the arbitrary and capricious standard

14   when the subject matter of the contract involves the agency's specialized

15   expertise." *Sternberg v. Secretary, Dept. Of Health And Human Services*, 299 F.3d

16   1201, 1205 (10th Cir. 2002) (citing the principles articulated in *Chevron U.S.A.,

17   Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). This

18   proposition has also been explicitly accepted by the Eleventh and D.C. Circuits:

19   *see Muratore v. U.S. Office of Personnel Management*, 222 F.3d 918, 921-22 (11th

20   Cir. 2000) (surveying the circuit split, noting that First Circuit authority also

21   supported a deferential standard, and adopting the "majority" view); *Nat'l Fuel

22   Gas Supply Corp. v. Fed. Energy Regulatory Comm'n*, 811 F.2d 1563, 1569 (D.C.

23   Cir. 1987) (deferring to an agency's interpretation of a settlement agreement).

24       Because the Master Lease involves subject matter clearly within the BIA's

25   specialized expertise, the authority cited above suggests that an arbitrary and

26   capricious standard would be appropriate here. However, given the Ninth Circuit's

27   established rule, and the fact that these motions involve purely legal questions, the

28   Court will apply a *de novo* standard of review.

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** * 8

### III.  Analysis

*A. Plaintiff's Motion for Partial Summary Judgment*

Plaintiff advances three arguments in support of summary judgment: (1) Plaintiff and its predecessor actually or substantially complied with the notice requirements of the option to renew; (2) regardless of notice, the BIA's actions approving the exercise of the option effectively extended the term of the lease; and (3) the Court should find in equity that the lease extends to 2034. The parties agree that principles of federal common law govern the Court's  interpretation of the Master Lease. *See United States v. Seckinger*, 397 U.S. 203, 209-210 (1970) (holding that federal law applies where "the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution").

**1.    Actual or Substantial Compliance**

Plaintiff first argues that Evans' 1985 letter actually complied with the provisions of the Master Lease. Plaintiff asserts that the Master Lease represents the "Lessor" to be the Department of the Interior and the BIA, pointing to the signature block on page 26 of the Master Lease. Contrary to Plaintiff's argument, the  Master Lease clearly and unambiguously defines "Lessor" to be the individuals listed in the exhibit attached to the lease. The BIA did not have authority to sign the lease or accept service of a notice for the other listed Indian landowners. The Superintendent of the Colville Agency is merely one listed party, who has regulatory authority to sign the Master Lease as a guardian of the individual landowners. Moreover, federal law is clear that the BIA is not a party to leases of this kind. *McNabb v. United States*, 54 Fed. Cl. 759, 769 (Fed. Cl. 2002) (holding that the BIA's managerial control over allotted lands does not convert the BIA into a party to contracts involving those lands). Therefore, Evans' 1985 letter failed to actually comply with the notice provisions of paragraph 29 of the Master Lease, requiring that notices to the Lessor be sent to the Indian landowners via certified mail.

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 9**

1    Alternatively, Plaintiff argues that the doctrine of substantial compliance is
2    accepted in federal contract law, and that application of that doctrine here suggests
3    that Plaintiff complied with the notice requirements.

4    The doctrine of substantial compliance or substantial performance is well-
5    established in contract law, dating back to Justice Cardozo's holding that a
6    deficiency in performance may not be considered a breach as long as it is not "so
7    dominant or pervasive as in any real or substantial measure to frustrate the purpose
8    of the contract." *Jacob & Youngs v. Kent,* 129 N.E. 889, 891 (N.Y. 1921). Plaintiff
9    argues that the purpose of the Master Lease was "to lease MA-8 thereby collecting
10   rents for the allottees and have improvements made upon it," and that any
11   deficiencies in Plaintiff's attempt to provide notice of renewal did not frustrate that
12   purpose.

13   Plaintiff first cites a case from the Court of Federal Claims, *Zlotolow v.*
14   *United States*, 35 Fed. Cl. 133, 137 (Fed. Cl. 1996). *Zlotolow* holds that a lessee
15   complied with contractual renewal notice requirements despite a "trivial error" in
16   incorrectly addressing the renewal notice and misspelling the addressee's name. *Id.*
17   *Zlotolow* does not mention the doctrine of substantial compliance, and arguably
18   holds that the lessee *actually* complied with the notice requirements.

19   Plaintiff's position receives better support from the second case Plaintiff
20   cites: *Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 563 (4th Cir. 1994).
21   *Phoenix* upheld a district court's application of the doctrine of substantial
22   compliance in the context of a life insurance policy under ERISA. The court was
23   careful to note that the doctrine "does not materially modify a [contract], but rather
24   is simply a doctrine to assist the court in determining whether conduct should, in
25   reality, be considered the equivalent of compliance under the contract." *Id.*
26   Accordingly, the point of the substantial compliance doctrine "is to give effect to
27   an insured's intent to comply when that intent is evident." *Id.* at 565. Notably, the
28   court narrowly limited its holding: "We do not hold that the federal common law of

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR**
**PARTIAL SUMMARY JUDGMENT** * 10

1    substantial compliance is applicable in any context other than that before the court

2    in the instant case." *Id.*

3          Defendants argue that the doctrine of substantial compliance is inconsistent

4    with BIA's trust relationship with Indian beneficial owners, and that "[a]cceptance

5    of partial compliance would be the equivalent of changing the lease terms, and BIA

6    has no authority to do that absent the consent of the landowners." Defendants cite

7    *Star Lake R.R. Co. v. Lujan*, 737 F. Supp. 103, 107 (D.D.C. 1990), a case applying

8    an abuse of discretion standard of review to an agency's interpretation of its own

9    regulations.

10         Assuming *arguendo* that the doctrine of substantial compliance applies in

11   this context, the Court finds that none of the events following Evans' 1985 letter

12   were sufficient to cure that letter's failure to comply with the notice requirements.

13   Plaintiff cannot locate a specific point in the record when Evans or Plaintiff

14   achieved substantial compliance, or when the Indian landowners received actual

15   notice.

16         The closest Plaintiff can come is to point to events surrounding the proposal

17   of a 99-Year Replacement Lease in 2005 and 2006. At the hearing on this matter,

18   Plaintiff argued that it was hamstrung by the BIA Colville Agency's refusal in

19   2005 to provide a current list of Indian landowners and their addresses. Plaintiff

20   claims that the Agency promised to forward all correspondence on to the Indian

21   landowners, and that Plaintiff subsequently sent a packet to the BIA Colville

22   Agency containing a copy of Evans' 1985 letter. The record establishes only that

23   Plaintiff submitted a lease proposal to the BIA Colville Agency, and that copies of

24   Evans' 1985 letter were hand-delivered to the few individuals who attended the

25   meetings held on that proposal (Jeffrey D. Webb's Declaration in Support of

26   Plaintiff's Motion for Partial Summary Judgment, pp. 11-15; Paul Wapato's

27   Declaration in Support of Plaintiff's Motion for Partial Summary Judgment, pp. 2-

28   3).  These actions were insufficient to achieve substantial compliance as a matter of

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 11**

1  law. Plaintiff has not shown that all of the then existing Indian landowners
2  received the notice as a result of these meetings and correspondence.

3      Moreover, *Phoenix* instructs the Court to focus on whether the undisputed
4  facts establish that the lessee here *intended* to comply with the notice requirements.
5  30 F.3d at 565. Plaintiff's request for a current list of Indian landowners in 2005
6  was made "in pursuit of obtaining...a replacement lease for Wapato Heritage"
7  (Webb Declaration at p. 11-12). The hand delivery of Evans' 1985 letter at the
8  meetings in 2006 was for the same purpose, and not for the purpose of providing
9  notice of the exercise of the option to renew. Even after being notified of the BIA's
10 position that the option to renew had not been validly exercised, Plaintiff failed to
11 provide written notice to landowners. Rather, Plaintiff's position all along has been
12 that notice was properly provided by Evans' 1985 letter. As discussed above, that
13 position is inconsistent with the requirements of the Master Lease. That document
14 contemplates that the Indian landowners were entitled to notice that would, in fact,
15 trigger a legal obligation. The record establishes that no such notice was ever
16 provided.

17     Therefore, the Court finds that Evans and Plaintiff failed to actually or
18 substantially comply with the renewal provisions of the Master Lease.

19 **2.    BIA's Alleged Approval of Lease Renewal**

20     As described above, Plaintiff describes a series of events in which the
21 Colville Agency and its representatives treated the exercise of the renewal option
22 as a *fait accompli*. Plaintiff acknowledges that the lessee's exercise of the option to
23 renew did not *require* any approval by the BIA, and Defendants argue that they
24 had no independent authority to so approve absent consent from the Indian
25 landowners, citing *McNabb,* 54 Fed. Cl. at 769.

26     The Court agrees with Defendants. The BIA is a party to the contract only
27 insofar as it has guardianship signatory authority for a minority of allottees.
28 Neither the lease nor the law grant the BIA the authority to alter the notice

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT * 12**

1  requirements, ratify any deficiency in compliance with those requirements, or
2  unilaterally approve any extension of the lease.

3  **3.    Balance of Equities**

4      Plaintiff cites a Washington case in support of its argument that the balance
5  of equities weighs in Plaintiff's favor. In *Wharf Restaurant, Inc. v. Port of Seattle*,
6  24 Wash. App. 601 (1979), the court excused a lessee's failure to timely exercise
7  an option to renew based on a number of factors. The court recognized that these
8  "special circumstances" permitted a narrow, equitable exception to the general rule
9  that notice must be given in accordance with the provisions of the lease. *Id.* at 610,
10  612.

11      The record here establishes that Plaintiff inexplicably failed to provide
12  notice to the Indian landowners despite being notified of the BIA's position on
13  lease renewal over two months before the applicable deadline. Plaintiff's letter of
14  December 18, 2007, fails to request a current list of Indian landowners, or even
15  simply declare that the option was then being exercised and ask the Colville
16  Agency to forward a notice of renewal to the Indian landowners. These do not
17  constitute the kind of special circumstances that would permit the Court to apply
18  *Wharf Restaurant*'s narrow exception to the general rule.

19      *B. Defendant's Motion for Partial Summary Judgment*

20      Defendant moves the Court to dismiss Plaintiff's first four claims for relief,
21  yet the parties' briefing in this matter has been limited to Plaintiff's third claim for
22  relief, discussed above. Because no genuine issues of material fact exist with
23  respect to that claim, and the Court has determined that Plaintiff is not entitled to a
24  declaratory judgment that the option to renew was validly exercised, Defendant is
25  entitled to summary dismissal of that claim. However, the Court will not consider
26  Plaintiff's other claims unless the parties specifically brief those claims.

27  **IV. Conclusion**

28      Plaintiff neither actually nor substantially complied with the renewal notice

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** * 13

terms of the Master Lease. Moreover, the BIA lacked the authority to ratify any deficiency in compliance with those terms, and Plaintiff is not entitled to an equitable exception for its failure to comply. Therefore, the Court denies Plaintiff's motion for partial summary judgment and grants Defendant's motion with respect to dismissal of claim three.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 13) is **DENIED.**

2.  Defendant's Cross Motion for Partial Summary Judgment (Ct. Rec. 17) is **GRANTED in part** and **DENIED in part**.

3.  Plaintiff's Third Cause of Action (Declaratory Judgment that the Master Lease Does Not Expire Until February 2, 2034) is **DISMISSED**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 21st day of November, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2008\Wapato Heritage\grant.SJ.ord.wpd

**ORDER GRANTING IN PART DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT * 14**